## QUIGLEY'S CASE.

An assessment of damages upon a petition for the appointment of "proper persons to view and adjudge the value of so much improved land as was taken up for the use of a turnpike road," cannot be sustained. The application should be for the appointment of proper persons to view and adjudge *the amount of the damages* done by making a turnpike road over the land of the petitioner.

CERTIORARI to the Court of Quarter Sessions of *Allegheny* county.

The facts of this case are fully stated in the opinion of the court.

*Burke* for reversing the proceedings.

*Kingston,* contra.

The opinion of the court was delivered by

KENNEDY, J.---The petition in this case was presented to the Court of General Quarter Sessions of the Peace of *Allegheny* county, setting forth that a turnpike road had been lately laid out and opened by the *Pittsburg* and *Steubenville* Turnpike Road Company, through the improved lands of the petitioner; and praying the court to appoint proper persons to view and adjudge the *value* of so much of his improved land as was taken up for the use of the said road.

Three viewers only were in the first instance appointed by the court to view and adjudge the *value* of the improved lands of the etitioner taken up for the use of the road. They, in obedience to

(Quigley's Case.)

the order of the court *valued* the same at forty-three dollars, of which they made a report to the court. Upon this report no order of the court was ever made; it was neither confirmed, approved, nor set aside.

After this, at November sessions, 1825, six viewers were appointed by the court, who made a report to January sessions, 1826, *valuing* the improved lands of the petitioners, which were taken up by the road, at sixty-five dollars. This report was approved *nisi* by the court at the same session; but at January sessions, 1827, was set aside, and a new view and appraisement ordered. The clerk accordingly issued an order to the persons last appointed, *James M'Crery*, *John Taylor*, *Isaac Jacobs*, *Benjamin Kelso*, *Thomas Rea*, and *Thomas M'Kown*, directing them to view and adjudge the *value* of the improved lands of the petitioner, taken up for the use of the road, and to make report thereof at the next sessions. These viewers made a report to the court at November sessions, 1827, that they "found for the within named petitioner, *James Quigley*, the sum of sixty dollars with *costs of suit*, which was approved of by the court as to the *damages* only.

It is unnecessary to notice all the irregularities apparent upon the face of their proceedings, as all must be reversed for want of authority on the part of the court to entertain the petition, in the form in which it is drawn up, and was presented. The prayer of the petitioner is, to have viewers appointed to view and adjudge to him the *value* of his improved lands taken up with the road, instead of to view and adjudge the *amount of the damages* which had been done to him by taking the road over his land.

The act of assembly authorizing the incorporation of the *Pittsburg* and *Steubenville* Turnpike Road Company, passed the 3d of March, 1818, *Pamphlet Laws, p.* 141, contains no express provision in relation to this matter. The 3d section, which declares the powers and liabilities of the company, among other things sets forth, that the company shall "generally have like powers, authorities and privileges necessary for carrying on and completing the said turnpike road, and be *subject* to all the *duties, qualifications, restrictions*, penalties, fines, forfeitures, &c. imposed upon the company of the *Harrisburg* and *Pittsburg* Turnpike Road, by an act passed the 24th of February, 1806. The 8th section of this act, see *Pamphlet Laws* of 1805-6, *page* 357, provides "that if the said road (that is the *Harrisburg* and *Pittsburg* Turnpike Road,) shall be laid out founded over and upon any land, whereby the owner or owners thereby shall suffer *damage*, the person or persons suffering such *damage*, may make application to the *court of the county* in which the damage shall have been done, and thereupon the court shall appoint six fit and disinterested persons to view and adjudge the *amount of the damage* so done, which, if approved of by the

court, shall be paid by the company." By construction it is possible to make out from these two acts, that the same mode which is prescribed for relief to those who sustained *damage* by the making of the road over the lands under the latter, is also given to those who have sustained like damage by the making of the road under the former. The remedy is by presenting a petition to the *court of the county* where the damage has been done. The court here intended, may be somewhat doubtful. In another section of the same act, for a different purpose, the court of *Quarter Sessions* of the *proper county* is expressly mentioned, from which it might perhaps be inferred, that as often as the words "*Quarter Sessions,*" are not superadded to the "*court of the county,*" that the Court of Common Pleas was intended. On the other hand it may be said, that the subject of assessing damages sustained by the laying out and opening of private and public roads under the general road law of the state, as also in some cases of roads made by incorporated companies, the power of appointing viewers to view and adjudge the damage is *expressly* given to the courts of Quarter Sessions of the proper counties respectively, and why give it to the court of Common Pleas in this instance? Although I am inclined to believe that the court of Quarter Sessions was intended in this case, as it has been usual to give the power in similar cases to that court, yet perhaps either court might receive and act upon the petition of the party claiming to be injured by the making of the road over his land, were it drawn up in proper form; but there is no authority, either express or constructive, given by the acts in question or any other act, to either the court of Quarter Sessions or Common Pleas of the county where the damage has been done, to receive a petition, praying the appointment of viewers to view and adjudge the *value* of the land taken up for the use of the road, whether the land be improved or unimproved, and to appoint viewers for such a purpose. This however is what was done by the court in the present case. The petitioner ought in his petition to have requested the court to appoint six fit and disinterested persons to view and adjudge the *amount of the damage* done by making the road over his land. This is a very different thing from viewing and adjudging the value of the land itself taken up with the road, which may well be presumed in all cases to be of some *value*, and of course the proprietor through whose land the road has been made, would be entitled to be paid something by the company in all cases. But it is the damage done to him, that he has a right to claim in such case, for the road, although laid out and made through his land, even his improved land, may, and most generally is, I presume, an advantage and benefit to him, instead of an injury or damage. Besides, why should he be paid the value of his land in any case, without giving up his title to it to the com-

pany? The making of the road upon his land does not divest him of his title to it. He is still the owner, and has a right to use it as he pleases, provided he does not injure the road or obstruct the public in the use of it. For instance, he may remove the minerals, coal, &c. which lie in the bowels of the earth under the road, if it be done without prejudice to the road or the public, and the road itself, which may enable him to carry these things to a cash market, enhances in this way greatly the value of his land, and becomes a benefit to him instead of damage. All the proceedings upon the petition in this case in the court below are reversed.